Charles L. DEAN, Jr., Administrator of the Estate of L. T. McGee, Deceased, Plaintiff,

v.

Edmond V. COLE, Defendant.

No. AC/663.

United States District Court
E. D. South Carolina,
Columbia Division.

May 17, 1963.

---

Edens & Hammer, Columbia, S. C., for plaintiff.

Roger M. Heyward, Belser & Belser, Columbia, S. C., for defendant.

WYCHE, District Judge (sitting by designation).

This is an action under the Lord Campbell's Act to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence and wantonness of the defendant in the operation of his automobile.

In compliance with Rule 52(a), Rules of Civil Procedure, I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### FINDINGS OF FACT

1. Plaintiff is a citizen of the State of North Carolina, and the defendant is a citizen of South Carolina, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.00.

2. At about 1:20 a. m. on May 13, 1956, the Sheriff of Sumter County, South Carolina, received a telephone call and in response to the call went about fourteen miles east of Sumter on U. S. Highway 378 and there found plaintiff's intestate L. T. McGee lying on his face, dead, off of the roadway on the left side (going east); there were glass and debris in the center of the highway and glass was strewn up and down the road; there were skid marks in the right-hand portion of the highway (going east), beginning in the right-hand lane, and going across the center line and on off of the highway. The glass picked up at the scene was found to have the following on it: FO MO CO E IN MADE USA 12 VOLT, indicating that the broken headlight had a 12 volt ignition system and was made by Ford Motor Company. 1956 was the first year that Ford Motor Company came out with a 12-volt ignition system and only on Lincolns that year.

3. On the early morning of May 13, 1956, about two miles out of Sumter, a 1956 Lincoln convertible, pink body, black top, top up, back glass down, was parked off of the highway on the right and pulled directly in front of an insurance salesman who lived in Turbeville, South Carolina, and who was traveling toward Turbeville (east) on U. S. Highway 378; the insurance salesman had to apply brakes to keep from hitting the Lincoln; the insurance salesman followed along behind the Lincoln for a couple of hundred yards before passing it; after passing it he continued toward Turbeville at a speed of about 65 or 70 miles per hour. The Lincoln had a South

Carolina license. The Lincoln was occupied by a white man with a fresh haircut and black hair who was driving, and a blonde-hair woman with a pony-tail hair style.

There was another automobile behind the insurance salesman during the time he was following the Lincoln and after he passed the Lincoln, the Lincoln and the other car traveled together along the highway at approximately the same speed, with the Lincoln in front, staying about a mile behind the insurance salesman. The two cars were traveling at a speed of approximately 60 or 70 miles per hour.

About 13 or 14 miles after passing the Lincoln, the insurance salesman saw a man walking in the direction of Sumter (west) on the right-hand "set-back" about 15 or 20 feet off of the pavement, who was later identified as plaintiff's intestate L. T. McGee, and about two or three hundred yards further down the road he noticed a Ford automobile that had backed off of the paved portion of the highway, the front wheels were in the "set-back" and the back wheels were up on the "wooded part" and almost straight to the road; the headlights were not burning on the car, but the dome light inside the car was burning, the left front door was open; the car looked familiar to the insurance salesman and after traveling another hundred yards or so he decided to turn around and go back to see if he could help the man he had seen walking along the highway.

When the insurance salesman turned around and was proceeding in a westerly direction the headlights of the oncoming vehicles were facing him. When he got within five or six hundred yards of the oncoming cars, he saw the car meeting him zig-zag, or cut back and forth, across the highway for a second or two—four or five zig-zags, and then he saw a black shadow between the headlights of his car and the headlights of the car he was meeting; the car he was meeting cut toward his side of the road over the white line and then straightened up; the car came over far enough in his lane that

he applied his brakes, fearing that he was going to be hit; two cars then passed him and he saw that the first car that passed was the 1956 Lincoln that he had passed when he was traveling east on U. S. Highway 378, and that the left front headlight on it was out; as the lights on the two cars passed, the insurance salesman saw just a few feet in front of him a man lying on his side of the road and he had to apply brakes to keep from running over him. The man's feet were at the edge of the pavement, a foot or so from the shoulder, his head was toward the center line toward Sumter; his back was toward the insurance salesman, lying sideways.

The insurance salesman looked back at the two cars that had passed and they cut their lights off, speeded up and did not stop. This took place between 12:45 and 1:00 o'clock a. m. The insurance salesman observed skid marks in the highway starting off at about the center of the lane of travel going toward Turbeville (east) and ending across the white line.

4. May 13, 1956, was a clear night. The road was an open highway, straight for about six or eight miles at the place of the accident. The speed limit was 55 miles an hour.

5. At around 1:30 o'clock a. m. on May 13, 1956, a Lincoln automobile, pink body, black top convertible, with the top up, with South Carolina license tags, and a Fort Jackson sticker on it, drove into a filling station at Manning, South Carolina, on U. S. Highway 301, north, a distance of about eighteen miles from the scene of the accident; a white man about 5'9" tall, weighing approximately 180 pounds, and a white woman were in the Lincoln; the filling station operator could not say whether or not the defendant who was sitting in the Court Room during the trial of the case was the driver of the car; the woman went to the rest room and the man got a coca cola; the filling station operator observed that the left front headlight was out and "wrinkles down the side" and the right rear fender was bashed in on the Lincoln

automobile, and he remarked to the driver of the Lincoln about it and the driver said that he had done it on a guy wire; the man drank his coca cola and the woman came back from the rest room and they got in the car and left, going back in the same direction from which they had come; in two to four minutes after the Lincoln left the filling station a Highway Patrolman came into the filling station inquiring about a Lincoln automobile, saying that there had been a "hit and run" accident.

6. Upon information received the Sheriff of Sumter County, South Carolina, on May 27, 1956, went to Pringle Brothers Motors, Inc. in Biloxi, Mississippi, and there found a damaged left front pink fender which had been removed from a 1956 Lincoln belonging to the defendant Edmond V. Cole of Columbia, South Carolina, bearing South Carolina license. The Lincoln automobile had been brought in to Pringle Brothers Motors in Biloxi, Mississippi, on May 16, 1956, with left front fender, left cowl panel and hood panel damaged, the biggest damage being on the fender, however it was not smashed or crumpled and the paint was not damaged on it, but there was a depression on the fender, and upon direction the fender was replaced, and the hood painted.

7. After the left front fender of the Lincoln automobile of the defendant had been replaced in Biloxi, Mississippi, the defendant returned to South Carolina. A Deputy Sheriff for Sumter County, South Carolina, investigating the case went to Nelson Motors in Columbia, South Carolina, where the Lincoln automobile had been taken for repairs of the damage to the rear right of the car which had been done in New York, and when one of the mechanics at Nelson Motors took off the left front headlight rim that holds the light in and behind that in the assembly, there were small slivers of glass, showing that the light had previously been broken and replaced.

8. For the year 1956, through May 15, 1956, there were five Lincoln convertibles registered with the South Carolina State Highway Department, and 1956 South Carolina License G 1970 was issued on April 13, 1956, to Cole Studios, Building 4299, Fort Jackson, South Carolina, for a 1956 Lincoln convertible. Defendant's Lincoln convertible was the only Lincoln convertible registered with the South Carolina Highway Department that had a Fort Jackson sticker or tag on it.

9. The defendant Edmond V. Cole admitted that he owned a 1956 Lincoln convertible, black top with a light purplish (amethyst) body, and that it had a black and white Fort Jackson sticker for commercial vehicles on it, and that on the morning of May 12, 1956, all known damage to the automobile was confined to the right rear portion of the automobile which had been caused in a collision in New York State, while the automobile was being driven by Stanley Thielman, a friend and former employee, who had gone to New York with him the week prior.

10. On Tuesday, May 29, 1956, after the Sheriff of Sumter County, had been to Biloxi, Mississippi, and gotten the damaged fender, he talked with the defendant and the defendant told him that the damage to the right rear side of his 1956 Lincoln was done in New York, a few days prior to May 12, 1956, but that he did not know how the damage was done to the fender on the front left side of his car and the only thing he knew was that he had his car parked at the Columbia Drive In and apparently someone backed into the car there and the defendant said to the Sheriff, "I know what you want me to say but I am not going to say it until I have conferred with my attorney" and he then inquired of the Sheriff if his prime interest in the case was to see that the family of the deceased was taken care of. The defendant could not give the Sheriff a minute account of his activities on the night of the accident.

11. The defendant admitted that he and his friend Stanley Thielman left New York, on May 11, 1956, and arrived in Columbia, South Carolina, shortly

after midnight on May 12, 1956, and that around eight or nine o'clock the morning of May 12, 1956, he took his Lincoln automobile to Nelson Motors in Columbia, where he had bought it, to get an estimate for repairs of the damage done to his automobile in New York, in order to file claim under his $100 deductible collision insurance policy, and that the repairs to the rear right of his Lincoln were made by Nelson Motors sometime around May 28, 1956.

12. Defendant is in the photographic business with studios at Fort Jackson, South Carolina.

13. The defendant admitted that he did not lend his Lincoln convertible or give anybody permission to use it the night of the accident, and that between the hours of 1:00 o'clock p. m. on Saturday, May 12, 1956, and 9:00 o'clock a. m. on Sunday, May 13, 1956, his Lincoln convertible was in his possession.

14. The defendant did not recall what he did on Sunday, May 13, 1956.

15. The defendant admitted that on either Monday, May, 14, 1956, or Tuesday, May 15, 1956, he and Stanley Thielman left Columbia, South Carolina, to go to Biloxi, Mississippi, which is about one and one-half days' travel time from Columbia, in his damaged 1956 Lincoln convertible, and that on May 16, 1956, Stanley Thielman took the Lincoln convertible to Pringle Brothers Motors, Inc. in Biloxi, Mississippi, where the left front fender was replaced and that Pringle Brother Motors, Inc.'s bill was for $122.39 which he paid, but that he did not make claim with the insurance company on his $100 deductible collision insurance policy, and that he and Stanley Thielman returned to Columbia, South Carolina, around May 21 or 22, 1956.

Pringle Brothers Motors' bill was for the following repairs: "Replace left front fender; replace front fender mldg.; str. hood panel; fill cowl panel; painting".

16. The driver of the 1956 Lincoln convertible, immediately after the "hit and run" accident told the filling station operator at Manning, South Carolina, that the damage to his Lincoln automobile had been done on a guy wire; the defendant told the Sheriff of Sumter County, South Carolina, when the Sheriff was interviewing him after his return from Biloxi, that the damage to the left front fender of his Lincoln automobile must have been done while he had it parked at the Columbia Drive In, that someone must have backed into it; at the trial of the case the defendant said that the damage to the left front of his Lincoln was done at Fort Jackson, that he found blue paint on the fender and he assumed that a blue truck usually parked in the area where he parked his Lincoln had hit it.

17. The preponderance of the evidence in this case establishes that (1) the automobile which struck and killed plaintiff's intestate was owned by the defendant Edmond V. Cole; (2) the defendant Edmond V. Cole, was the driver of the 1956 Lincoln convertible automobile which struck and killed plaintiff's intestate and left the scene without stopping; (3) the negligence and wantonness of the defendant while driving his Lincoln convertible automobile was the proximate cause of plaintiff's intestate's death; (4) plaintiff's intestate was not guilty of negligence, contributory negligence or contributory wantonness.

18. L. T. McGee died intestate, survived by an only child, a married daughter, Theo McGee Tedder, who lived with him, but was supported by her husband. The deceased was sixty-nine years old at the time of his death and was a farmer. As a result of the death of her father, Theo McGee Tedder has suffered actual damages in the sum of Twenty Five Thousand ($25,000.00) Dollars. Plaintiff is, therefore, entitled to have judgment against the defendant Edmond V. Cole in the sum of Twenty Five Thousand ($25,000.00) Dollars, actual damages.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. The defendant was guilty of actionable negligence, wilfulness and wantonness in the operation of his 1956 Lincoln convertible automobile upon the highway of South Carolina, in violation of the laws and statutes of South Carolina, and the negligence, wilfulness and wantonness of the defendant was the direct, proximate and efficient cause of the injuries and death of plaintiff's intestate L. T. McGee.

■ 3. The failure of the defendant to stop and render assistance is evidence of conscious indifference to consequences sufficient to warrant a finding of wantonness on the part of defendant. Harrington v. Sharff (C.A.2), 305 F.2d 333 (1962); Garippa v. Wisotsky, Sup., 108 N.Y.S.2d 67, affirmed 280 App.Div. 807, 113 N.Y.S.2d 722, affirmed 305 N.Y. 531, 111 N.E.2d 443.

■ 4. Circumstantial evidence in order to be sufficient to warrant a finding of fact must lead to the conclusions with reasonable certainty and have sufficient probative value as to constitute a basis for a legal inference and not mere speculation. Such facts and circumstances must be reckoned with in the light of ordinary experience and the conclusions deducted therefrom be such as common sense dictates, and not rest upon speculation, surmise, or conjecture.

■ In my opinion, the evidence in this case meets the requirements of circumstantial evidence and is sufficient to establish that the defendant owned the automobile which struck and killed plaintiff's intestate, that the defendant Edmond V. Cole was the driver of the 1956 Lincoln convertible automobile which struck and killed plaintiff's intestate and left the scene without stopping, that the negligence and wantonness of the defendant while driving his Lincoln convertible automobile was the proximate cause of plaintiff's intestate's death, and that plaintiff's intestate was not guilty of negligence, contributory negligence or contributory wantonness.

5. The beneficiary for whom this action is brought is the married daughter of plaintiff's intestate.

6. Based upon the foregoing Findings of Fact and Conclusions of Law, I am of the opinion that the plaintiff Charles L. Dean, Jr., Administrator of the Estate of L. T. McGee, deceased, should have judgment against the defendant Edmond V. Cole in the sum of Twenty Five Thousand ($25,000.00) Dollars, actual damages.

Entry of appropriate judgment is directed accordingly, and

It is so ordered.